

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

February 19, 2008

**BY FACSIMILE**

The Honorable Kevin N. Fox
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 540
New York, New York 10007

      Re:    <u>United States v. Louis Lowell Mcguinn,</u>
              <u>07 Cr. 471</u>

Dear Judge Fox:

      The Government respectfully submits this letter in anticipation of the above-referenced defendant's sentencing, which is currently scheduled before Your Honor on February 22, 2008, at 10:30 a.m.  The defendant has pled guilty to wearing armed service medals without authorization, in violation of Title 18, United States Code, Section 704.  Although the crime itself is a Class B Misdemeanor,[1] and it is obviously a non-violent crime, it is nevertheless very serious.  The defendant posed as a highly-decorated Lieutenant Colonel to fraudulently obtain employment.  He lied to employers about his military past so that he could get ahead financially.  Moreover, by posing as a highly decorated officer, the defendant disgraced members of the armed services that have devoted their lives to obtaining the rank the defendant had posed as, and that have sacrificed life and limb in earning the medals the defendant fraudulently wore.  The defendant's wearing of these medals was an affront to the sacrifices these men and women made for their country, and the defendant's sentence, whether it be a short term of imprisonment or a period of probation with other penalties such as community service, a fine, and home confinement, should appropriately reflect the seriousness of his conduct.

---

      [1]     The Sentencing Guidelines do not apply to Class B Misdemeanors pursuant to U.S.S.G. § 1B1.9.

## Background

**A.     The Offense**

      The defendant has been fraudulently portraying himself as a Lieutenant Colonel since he left the army in approximately 1968.  PSR ¶ 10b.  Although the defendant had reported in his post-arrest interview that he had at least obtained the rank of corporal, army records revealed that he had actually been discharged as a private.  PSR ¶ 11.  His reasoning for posing as a Lieutenant Colonel when he left the army was to provide himself some maturity when applying for employment.  PSR ¶ 10b.  This fraud seemed to have been successful as the defendant was hired by at least one company, Codaoctupus, an underwater marine security company, for two consecutive six-month contracts as a consultant.  PSR ¶ 8.  The company stated that they hired him, at least in part, due to his fraudulent representations regarding his military service.  Id.  However, the defendant's wearing of his medals was not relegated only to seeking employment as wore them at a military ball at the Pierre Hotel, among other places.  PSR ¶¶ 5, 9.

**B.     The Medals Worn by the Defendant**

      The Government has included, as Exhibit A, a picture of the defendant fraudulently wearing his medals and rank insignia at the Pierre Hotel on October 4, 2006.  The Government has also included, as Exhibit B, a list and pictures of many of the armed service medals that the defendant fraudulently wore.

      The highest ribbon that the defendant wore was the Distinguished Service Cross, which is the second-highest military decoration of the United States Army.  It is a mostly blue ribbon with red and white stripes on the edges, and can be seen on the defendant's left upper jacket in Exhibit A.  It is awarded pursuant to 10 U.S.C. § 3742, to someone who "distinguishes himself by extraordinary heroism."  Some of the more recent examples of individuals that have been awarded the Distinguished Service Cross include:

> Sgt. Gregory Williams, for extraordinary courage while serving in 1-17 Infantry, 172nd Stryker Brigade Combat Team.  In October 2006. Sgt. Williams, while injured, pulled his wounded platoon leader to safety following an ambush, re-entered the burning Stryker (an eight-wheeled combat vehicle) filled with explosives, and drove off the enemy ambush with a vehicle mounted machine gun.  See Stryker Soldier Awarded Distinguished Military Cross, Army News Service, Dec. 13, 2007, available at www.army.mil/-news/ 2007/12/13/6554-stryker-soldier-awarded- distinguished-service-cross/.

> Chief Warrant Officer Keith Yoakum, posthumously decorated on November 15, 2007 for his valor and determination to continue fighting in a flak-riddled Apache helicopter. See Apache Pilot's Family Presented Distinguished Service Cross, Army News Service,

Hon. Kevin N. Fox
February 19, 2008
Page 3

May 15, 2007, available at www.army.mil/-news/2007/11/15/6107-apache-pilots-family-presented-distinguished-service-cross/.

The defendant also wore the Silver Star, which is the fourth-highest military decoration that can be awarded to any branch of the armed services. It can be seen next to the Distinguished Service Cross on the defendant's left upper jacket in Exhibit A, and has a large white stripe in the middle with blue and red stripes on the edges. It is awarded to a member who is "cited for gallantry in action that does not warrant a medal of honor or a distinguished service cross." 10 U.S.C. § 3746. Some recent examples of individuals that have been awarded the Silver Star include:

Staff Sgt. Jeffrey Adamec, who was awarded the Silver Star on September 10, 2003, after destroying four Iraqi armored personnel carriers and one enemy position with anti-tank missiles while his team was under enemy fire. See Adamec Earns Silver Star, Army News Service, Oct. 21, 2003, available at www.army.mil/-news/2003/10/21/1663-adamec-earns-silver-star/.

First Lieutenant Christopher Dean, who led a seven-tank attack to rescue an ambushed patrol in Iraq. He was hit by shrapnel from a rocket-propelled grenade blast, and still pushed on, rescuing 19 soldiers from the ambush. See 1AD Lieutenant Earns Silver Star, Army News Service, Nov. 23, 2004, available at, www.army.mil/-news/2004/11/23/1655-1ad-lieutenant-earns-silver-star/.

As can be seen in Exhibit A, the defendant wore the Distinguished Service Cross and Silver Star along with a host of other medals and ribbons, all unearned, including a Bronze Star (which can be seen in the second row of ribbons on the defendant's left chest),[2] three Purple Hearts (which is next to the Bronze Star – the first Purple Heart it the ribbon itself while the second and third Purple Hearts are indicated by silver pins on the ribbon),[3] and the Army Presidential Unit Citation (which is a blue square, and can be seen on the defendant's right chest).[4]

---

[2] Awarded to a member of the armed services who "distinguished himself or herself by heroic or meritorious achievement or service . . . in connection with military operations against an armed enemy." Exec. Order 9419 (1944); Exec. Order 11046 (1962).

[3] Awarded to a member of the armed services who was "killed or wounded in action by weapon fire while directly engaged in armed conflict."

[4] The Army Presidential Unit Citation is the highest unit citation awarded by the Army, and is awarded for a unit that displays such "gallantry, determination, and esprit de corps in accomplishing its mission under extremely difficult and hazardous conditions."

## Discussion

      18 U.S.C. § 3553(a) requires this Court to consider a number of factors in determining an appropriate sentence. First, this Court must consider the "nature and circumstances of the offense," and the need for the sentence imposed to "reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(1), (2)(A). Despite the maximum term of imprisonment being set at 6 months,[5] this is a serious crime primarily for two reasons. First, every time the defendant fraudulently wore these medals, such as the social event at the Pierre or the military club that he frequented, PSR ¶¶ 5, 9, he diluted their value and impugned the memory and sacrifices of members of the armed services that actually earned these medals. As discussed above, the medals the defendant wore were some of the highest medals one can earn in the armed services. These medals are given to men and women who exhibit extreme heroism – risking their lives in extraordinary ways for their country. In fact, many, if not most, of the Distinguished Service Crosses awarded, are awarded posthumously. Fraudulently wearing these medals is an affront to their memory, and an affront to the heroism of the surviving service men and women who were legitimately awarded them.

      Second, the defendant, at least in part, fraudulently portrayed himself as a Lieutenant Colonel and falsely represented that he had earned all of these medals in order to fraudulently obtain employment. The defendant admitted that after being discharged from the army in 1968, he took on this "persona" for financial gain. PSR ¶ 10b. His fraud continued to the present and can be seen most recently in his employment with Codaoctopus, who hired him, at least in part, on the basis of his false representations. PSR ¶ 8. The defendant was thus actively both disgracing the significance of these armed service medals and fraudulently using them for financial gain.

      Another factor that this Court must consider under 18 U.S.C. § 3553(a) is the need for the sentence imposed "to afford adequate deterrence." 18 U.S.C. § 3553(a)(2)(B). This includes both specific deterrence so that the defendant does not repeat his illegal conduct, and general deterrence so that others in society are deterred from similar crimes. The Government first notes that because simple possession of these medals is not a crime, the medals were not confiscated from the defendant. The defendant thus still possesses his fraudulent uniform and the medals he fraudulently wore. A significant penalty is required in this case so that the defendant, who has the means to commit this crime again, does not continue this fraud that has spanned forty-years. Moreover, general deterrence also counsels for a significant sentence. This Office has been advised by military personnel and investigators that these medals are, unfortunately, too readily available at pawn shops or even on the internet for sale. In order to combat the relative

---

      [5] Pursuant to the Stolen Valor Act of 2006, the maximum sentence was increased to one year imprisonment, but this section was signed into law December 20, 2006, approximately two months after the illegal conduct at issue in this case occurred. See 18 U.S.C. § 704.

Hon. Kevin N. Fox
February 19, 2008
Page 5

prevalence of this crime, aided by the ease of obtaining these medals, Congress passed the Stolen Valor Act of 2006, doubling the maximum term of imprisonment for someone wearing these medals without authorization.  Although defendant is not eligible for the enhanced penalties, it is important to let the public know that those who commit this crime will be taken seriously and will suffer serious consequences, in accordance with Congress' wishes.

       Finally, the Court must consider "the kinds of sentence[s]" available.  18 U.S.C. § 3553(a)(3).  Probation has recommended that the defendant pay a fine of $1,000 and be on probation for a period of one year.  Considering the severity of the crime and the need for deterrence, it would not be unreasonable for Your Honor to reject the recommendation in the Presentence Report, and to sentence the defendant to a short period of imprisonment.  However, regardless of whether the defendant is sentenced to a term of imprisonment, the Government would suggest that Your Honor impose additional conditions to the defendant's term of probation or to the defendant's term of supervised release following any imprisonment in recognition of the seriousness of the offense, and to provide the appropriate specific and general deterrence, including: 1) home detention, pursuant to 18 U.S.C. § 3563(b)(19), which can be imposed as an alternative to incarceration; 2) community service, pursuant to 18 U.S.C. § 3563(b)(11), under which Your Honor could recommend that Probation attempt to find a community service project that would be appropriate for the criminal conduct here; and 3) that the defendant work conscientiously at suitable employment, since the defendant is currently unemployed and has not held a steady job for some period of time, see PSR ¶¶ 29, 36.

Hon. Kevin N. Fox
February 19, 2008
Page 6

## Conclusion

    For the reasons discussed above, the Government respectfully suggests that Your Honor sentence the defendant to a sentence that appropriately reflects the seriousness of this crime, and that promotes both specific and general deterrence.

    Respectfully submitted,

    MICHAEL J. GARCIA
    United States Attorney

By:    /s Michael M. Rosensaft
    Michael M. Rosensaft
    Assistant U.S. Attorney
    (212) 637-2366

cc :     Xavier Donaldson, Esq.
    Attorney for Defendant